# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Yee S.,[1]

        Petitioner,

v.

Pamela Bondi, *U.S. Attorney General*; Kristi
Noem, *Secretary, Department of Homeland
Security*; Tauria Rich, *Acting Director, St.
Paul Field Office, Immigration and Customs
Enforcement*; and *Warden of Freeborn
County Detention Center*;

        Respondents.

File No. 25-CV-02782 (JMB/DLM)

**ORDER**

---

Nico Ratkowski, Ratkowski Law PLLC, St. Paul, MN, for Petitioner.

Ana H. Voss and Liles H. Repp, United States Attorney's Office, Minneapolis, MN, for
Respondents Pamela Bondi, Kristi Noem, and Tauria Rich.

---

This matter is before the Court on Petitioner Yee S.'s Petition for a Writ of Habeas

Corpus (Petition) (Doc. No. 1), Emergency Motion to Expedite Pursuant to 28 U.S.C.

§ 1657 (Motion to Expedite) (Doc. No. 11), and Emergency Motion for a Temporary

Restraining Order Under Federal Rule of Civil Procedure 65(b) and Preliminary Injunction

Under Federal Rule of Civil Procedure 65(a) (TRO Motion) (Doc. No. 13).  For the reasons

---

[1] This District has adopted a policy of using only the first name and last initial of any
nongovernmental parties in immigration cases.

explained below, the Court grants in part and denies in part the Petition, denies the Motion to Expedite, and denies the TRO Motion.[2]

## BACKGROUND

Petitioner is not a citizen of the United States but has lived in this country since 2007. He was born in Burma and spent his early years in a refugee camp in Thailand before immigrating to the United States as a refugee in 2007.[3] (Doc. No. 7 at 7; Doc. No. 8-2 (Repp Decl. Ex. B [hereinafter, "Removal Order"]) at 1; Doc. No. 14 at 6.) He later adjusted his status to lawful permanent resident. (Doc. No. 7 at 7.) On January 19, 2021, Petitioner pled guilty to a sexual conduct crime under Minnesota law, Minn. Stat. § 609.342.1(a). (Doc. No. 8-1 at 2; *see also* Doc. No. 1 [hereinafter, "Pet."] ¶ 13.)

On June 25, 2021, the Department of Homeland Security commenced removal proceedings against Petitioner, charging him as removable under section 237(a)(2)(A)(iii)

---

[2] The Petition names James McHenry and Lisa Monaco as U.S. Attorney General and Peter Berg as Field Office Director for the Minneapolis Field Office. (Doc. No. 1 at 1.) Pursuant to Federal Rule of Civil Procedure 25(d), Pamela Bondi, McHenry's successor as U.S Attorney General, and Tauria Rich, Berg's successor as Acting Director, St. Paul Field Office of U.S. Immigration and Customs Enforcement, are automatically substituted as parties. (*See* Doc. No. 7 at 1 n.1.) Monaco served as a Deputy Attorney General, and at Respondents' request (*see id.*), given that the current Attorney General is a party and the Petition makes no allegations specific to Monaco, the Court drops Monaco as a Defendant. In addition, the unnamed Warden of Freeborn County Detention Center neither filed a notice of appearance nor responded to the Petition. For brevity, this Order will refer to Bondi, Noem, and Rich as Respondents.

[3] Petitioner claims in his sworn Petition that he is "stateless" and avers that he is not a citizen of Thailand, but he does not specifically address whether he is a citizen of Burma. (Doc. No. 1 ¶ 11.) Petitioner's counsel, however, represents that Petitioner is a citizen of Burma. (Doc. No. 14 at 6.) The Immigration Judge in Petitioner's removal proceedings found that he was Burmese. (Doc. No. 8-2 at 4.) The Court assumes without deciding that Petitioner is a citizen of Burma or, as it is now known, Myanmar.

of the Immigration and Nationality Act.  (*See* Removal Order at 2.)  Petitioner admitted the factual allegations and conceded the charge of removability.  (*Id.*)  On September 13, 2021, Petitioner was ordered removed, but the Immigration Judge granted Petitioner's application for deferral of removal under the Convention Against Torture, ordering him "removed from the United States <u>to any other country than **BURMA**</u> that will accept him." (*Id.* at 17 (emphasis in original).).  No party filed an appeal, so the Removal Order became administratively final on October 13, 2021.  *See* 8 C.F.R. § 1003.38.

On December 13, 2021, Immigration and Customs Enforcement (ICE), which had kept Petitioner in custody during those removal proceedings, released Petitioner under an Order of Supervision after determining that there was no significant likelihood of his removal in the reasonably foreseeable future.  (Doc. No. 7 at 3; *see also* Doc. No. 8-7; Doc. No. 14 at 6.)  Petitioner avers that he "never violated any" of his conditions of supervised release and has not had any other "encounter with [] law enforcement."  (Pet. ¶ 16.) Respondents do not contest this assertion.  Nor do Respondents offer any evidence to the contrary.

On June 6, 2025, federal marshals arrested Petitioner "based on a determination that his removal is now significantly likely in the reasonably foreseeable future."  (Doc. No. 7 at 3.)  The next day, having already detained Petitioner, ICE served a Notice of Revocation of Release (Revocation Notice) on him.  (Doc. No. 8-3 [hereinafter, "Rev. Notice"]; *see also* Pet. ¶ 19 (referring to the "notice of revocation").)    The Revocation Notice acknowledged that Petitioner had been released from custody under conditions of supervised release on December 13, 2021 and further stated:

3

> This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of [ICE] at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.
>
> . . . On September 13, 2021, an immigration judge in Fort Snelling, Minnesota ordered you removed from the United States to any other country than BURMA that will accept you. On December 13, 2021, ICE officials released you from custody on an Order of Supervision (I-220B). *ICE is in the process of obtaining a travel document* and there is a significant likelihood of your removal in the reasonably foreseeable future.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.13, you are to remain in ICE custody at this time.

(Rev. Notice 1 (emphasis added).) The Revocation Notice also advised Petitioner that he would "promptly be afforded an informal interview" at which he would be "given an opportunity to respond to the reasons for the revocation" and submit "any evidence or information" he wanted to "be reviewed in support of [his]release." (*Id.*) ICE then conducted an "informal interview" that same day, the notes of which do not reflect any oral discussion. (Doc. No. 8-5.) ICE did not release Petitioner after the June 7, 2025 informal interview, instead keeping him in custody at Freeborn County Adult Detention Center. Four months later, Petitioner remains in custody.

On July 7, 2025, Petitioner filed the Petition. On July 29, 2025, pursuant to an order to answer the Petition "certifying the true cause and proper duration of Petitioner's confinement" and include "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised" in the Petition (Doc. No. 6 at 1), Respondents Bondi, Noem, and Rich filed a response brief and

supporting documents (Doc. Nos. 7, 8).  Petitioner then obtained counsel and filed the Motion to Expedite and the TRO Motion.

## DISCUSSION

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The Petition requests that the Court direct Respondents to immediately release Petitioner from custody and enter "preliminary and permanent injunctive relief enjoining [Respondent] from further unlawful detention of [P]etitioner."  (Pet. at 1.)

As a threshold matter, the Court concludes that it has jurisdiction to hear this Petition.  Under section 2241, federal courts have jurisdiction to order the release of a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.  More specifically, federal courts have jurisdiction to decide section 2241 petitions for habeas corpus filed by persons who remain detained after a deportation order has become final.  *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).  Because Petitioner does not challenge the Removal Order in the Petition but instead challenges the revocation of his supervised release and his continued detention, the Court has jurisdiction to decide the questions raised about the lawfulness of Petitioner's re-detention.[4]

## A.    REQUEST FOR IMMEDIATE RELEASE

Petitioner asserts that his detention is unlawful and that he should be immediately released because Respondents, "having previously determined that his removal was 'not possible or practicable,' failed to follow its own regulations requiring ICE to determine

---

[4] Respondents do not challenge this Court's jurisdiction.

that 'on account of changed circumstances, . . . there [was] a significant likelihood the [Petitioner] may be removed in the reasonably foreseeable future.'" (Pet. ¶ 24 (citing 8 C.F.R. § 241.13(i)(2)).) Given the limited response from Respondents concerning changed circumstances and compliance with the requisite procedures at section 241.13, the Court agrees with Petitioner and grants the Petition on this basis.[5]

Specific regulations govern the federal government's ability to detain, release, and revoke the release of noncitizens subject to orders of removal.[6] Government agencies are required to follow their own regulations. *See United States ex rel. Accordi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Sarail A. v. Bondi*, No. 25-CV-2144 (ECT/JFD), 2025 WL 2533673, at *2 (D. Minn. Sep. 3, 2025); *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025).

---

[5] Petitioner also raises a second, independent challenge to the lawfulness of his detention under *Zadvydas*, 533 U.S. at 678, arguing that Petitioner's ongoing detention exceeds the limits of Constitutional due process under *Zadvydas*. (Pet. ¶ 22.) In light of the Court's decision concerning the first basis, the Court need not also determine whether the length of Petitioner's detention separately requires granting the Petition. *See, e.g.*, *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, at *3 (D. Mass. June 20, 2025) (finding that the *Zadvydas* six-month presumption of reasonableness was not on point in considering the lawfulness of re-detention upon revoking supervised release). Nevertheless, the Court expresses its concern that Petitioner's detention has now lasted longer than six months. (*See* Doc. No. 7 at 10 (calculating that as of the filing of the Petition—125 days ago—Petitioner had "spent a total of 92 days in post-final order detention").) The *Zadvydas* Court cautioned that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701. Without reaching the question, the Court observes that the length of Petitioner's detention necessitates a very brief period of time that could constitute the "reasonably foreseeable future" contemplated in *Zadvydas*.

[6] The Court uses the term "noncitizen" instead of the term "alien."

After a noncitizen has been ordered removed, 8 U.S.C. § 1231(a)(1) provides a default ninety-day period within which to deport him. Certain exceptions allow the federal government to detain the noncitizen beyond the ninety-day removal period. 8 U.S.C. § 1231(a)(6). Even if one of those exceptions apply, however, noncitizens who have been ordered removed may not be held indefinitely. *Zadvydas*, 533 U.S. at 689.

ICE's implementing regulations establish procedures that govern when a noncitizen subject to a removal order has been detained past the expiration of the removal period and shows that there is no significant likelihood that he will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(a). If ICE determines that there is no significant likelihood that the noncitizen will be removed in the reasonably foreseeable future, and that no special circumstances justify continued detention, then ICE must release the noncitizen subject to appropriate conditions of supervised release. *Id.* at § 241.13(g). After the noncitizen has been released, section 241.13(i) regulates any revocation of the noncitizen's supervised release. The parties agree that section 241.13 concerning a revocation of release applies to Petitioner's case. (*See* Doc. No. 7 at 14–16; Doc. No. 14 at 8.)

When an individual is released pursuant to section 241.13, that release can be revoked on two grounds: violation of supervised release or changed circumstances. 8 C.F.R. § 241.13(i). Under the latter, ICE "may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). In either case—violation of

supervised release or changed circumstances—the regulations require ICE to notify the noncitizen "of the reasons for revocation of his or her release" and to conduct an initial informal interview promptly after the noncitizen's return to custody to afford the noncitizen an opportunity to respond to the reasons for revocation stated in the notification. *Id.* § 241.13(i)(3).

Although a habeas petitioner bears the ultimate burden of showing that his detention violates the law, *see Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966), the section 241.13 regulations place the burden on ICE to establish that "changed circumstances" justified the revocation of release. *Roble*, 2025 WL 2443453, at *4; *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Nguyen*, 2025 WL 1725791, at *3 n.2.

On the record before the Court, Respondents fail to identify "changed circumstances" to justify the conclusion that Petitioner is significantly likely to be removed in the reasonably foreseeable future. As Petitioner notes (*see* Pet. ¶ 19), in the Revocation Notice, ICE claimed summarily that the agency had made a "determination that there are changed circumstances in your case," and the only factual explanation provided was the assertion that "ICE is in the process of obtaining a travel document" (Rev. Notice 1). The Revocation Notice does not explain what the travel document is or how long it will take to obtain. Nor does it specify from which country ICE was attempting to obtain a travel document or describe what steps ICE had taken in this "process." (*See id.*) On its face, the general, boilerplate language in the Revocation Notice falls short of what is required by section 241.13.

In addition, Respondents' written submissions to this Court also fail to identify any "changed circumstances" to support a conclusion that there is now a significant likelihood of Petitioner's removal in the reasonably foreseeable future, as section 241.13(i)(2) requires. For instance, Respondents offer conclusory statements that ICE has complied with the regulatory requirements of section 241.13, but they do not identify what specific circumstances have changed. (*See* Doc. No. 7 at 14–17.) Nor do Respondents identify *any* specific country that has agreed to accept Petitioner, and at no point in their written submissions do Respondents describe what steps have been taken toward securing the necessary approvals.[7] In short, Respondents have identified no legitimate changed circumstances and thus failed to comply with section 241.13(i)(2).[8]

Moreover, the record presented does not establish that ICE made any reasoned determination that Petitioner is significantly likely to be removed in the reasonably foreseeable future. To revoke a noncitizen's release under section 241.13, ICE must "determine[]" that "on account of changed circumstances," there "is a significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future." 8

---

[7] Respondents suggest that section 241.13 has been satisfied because Petitioner may be removed to any country other than Burma, increasing the likelihood of removal. (Doc. No. 7 at 14.) Even if this is an accurate statement, Respondents do not explain how this possibility constitutes a changed circumstance since the Removal Order issued in 2021.

[8] To the extent that Respondents point to changes in governmental policy as a "changed circumstance," Respondents raise the argument only in footnotes. (*See* Doc. No. 7 at 4 n.3, 13 n.6 (citing Repp. Decl. Ex. J).) The Court thus declines to consider it. *See Falco Lime, Inc. v. Tide Towing Co.*, 29 F.3d 362, 367 n.7 (8th Cir. 1994). In any event, the policy Respondents cite addresses fear-screening procedures (Doc. No. 8-10), and Respondents do not explain its relevance to the question of whether any third country is likely to accept Petitioner in the reasonably foreseeable future.

C.F.R. § 241.13(i)(2). To make such a reasoned determination, the agency must "consider[] factors probative of the [noncitizen's] future removal," such as the factors set out in section 241.13(f). *Sarail A.*, 2025 WL 2533673, at *7 (citing cases); *see also Kong v. United States*, 62 F.4th 608, 620 n.13 (1st Cir. 2023) (referring to the factors in subsection (f) as relevant to the subsection (i)(2) determination governing re-detention of a noncitizen released under section 241.13). Those factors include, but are not limited to, the history of the noncitizen's efforts to comply with the order of removal, the history of ICE's efforts to remove noncitizens to third countries that are an option for this noncitizen's removal, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of noncitizens to the countries in question. 8 C.F.R. § 241.13(f). Respondents do not adequately develop an argument addressing any of these factors, as they have not even identified any third country where ICE purportedly expects to be able to remove Petitioner. Indeed, nothing in the Revocation Notice or notes from the informal interview shed any light on *why* ICE reached a determination that Petitioner's removal was significantly likely in the reasonably foreseeable future or what factors ICE considered in making any such determination before Petitioner's June 6, 2025 arrest. (*See* Rev. Notice; Doc. No. 8-5.) As noted above, Respondents' submissions to this Court provided no additional information.

More fundamentally, the record does not support a determination that Petitioner is significantly likely to be removed in the reasonably foreseeable future as required by § 241.13(i)(2). The government released Petitioner from custody four years ago, in December 2021, based on a determination that there was no significant likelihood of his

removal in the reasonably foreseeable future at that time.  The record indicates that Burma, the country where it appears Petitioner is a citizen, is still not an option under the Removal Order.  (Removal Order at 17.)  As noted above, Respondents direct the Court to no facts in the record supporting a conclusion that any specific country where Petitioner is not a citizen would agree to accept him.  (Doc. No. 7 at 3.)  Finally, the Court finds Respondents' lack of evidence of any progress even during the pendency of this case to be telling. Despite the passage of nearly two months between Petitioner's June 6, 2025 arrest and when Respondents filed their response to the Petition—and despite being ordered to provide "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised" in the Petition (Doc. No. 6 at 1)—Respondents offer no further information to show progress toward effectuating Petitioner's removal.  Respondents simply repeat the vague and conclusory assertions that "ICE is in the process of obtaining a travel document" and that the "agency believes that Petitioner's removal is significantly likely in the reasonably foreseeable future."  (Doc. No. 7 at 4; *see also id.* at 12.)  For this assertion of the agency's "belie[f]," Respondents cite to a declaration of Joshua L. Holien (Doc. No. 7 at 4), but no such declaration was filed.  Even if a declaration had been filed averring to this threadbare, subjective belief, it would have been immaterial.  Respondents' memorandum provides no further details that would support such a belief.

Indeed, Respondents have offered even fewer facts to justify a section 241.13(i)(2) determination in this case than in several other similar cases where courts granted petitions for a writ of habeas corpus.  In *Nguyen*, for example, ICE asserted that there was a

11

substantial likelihood that a noncitizen would be removed to Vietnam, the country where he was born, because the United States had "recently entered into a repatriation agreement" or 2020 Memorandum of Understanding with Vietnam, and "ICE ha[d] recently started to remove Vietnamese citizens to Vietnam consistent with that agreement."   2025 WL 1725791, at *1–3.   Even upon receipt of supplemental information from the government about its success rate in removing individuals to Vietnam over the prior year, and the government's representation that "ICE [was] currently processing a travel document for [the petitioner] to return to Vietnam," the *Nguyen* court found these asserted facts were insufficient to demonstrate that ICE had re-detained the petitioner based on changed circumstances under section 241.13(f) and (i) and ordered his immediate release on the basis that ICE's re-detention of the petitioner had violated ICE's own regulations.   *Id.* at *4–5; *see also Escalante*, 2025 WL 2206113, at *4 (finding that the government had failed to make the required section 241.13(i)(2) showing where it "only made conclusory statements that they are taking steps to remove Petitioner to Mexico or perhaps Canada" and ordering the petitioner's release); *Sarail A. v. Bondi*, No. 25-CV-2144 (ECT/JFD), 2025 WL 2742442, at *3 (D. Minn. June 17, 2025), *report and recommendation adopted,,* 2025 WL 2533673 (rejecting as inadequate the government's explanation that after detaining the petitioner, the government learned that Jamaica was "cooperating with ICE to issue travel documents"—without specifying for the petitioner—and where it was not established that petitioner was a Jamaican citizen, and recommending ordering the petitioner's immediate release).

Accordingly, Petitioner has shown that ICE's re-detention of him on June 6, 2025 violated the law because ICE did not comply with its own regulations under section 241.13(i)(2).[9]  Petitioner must be released immediately.

## B.    REMAINING REQUESTS

In the Petition, Petitioner also seeks a preliminary injunction "enjoin[ing] [R]espondent[s] from re-detaining him without court approval" (Pet. ¶ 27), and a preliminary and permanent injunction "enjoining Respondents from further unlawful detention of Petitioner" (*id.* at 11).  Petitioner also filed a Motion to Expedite a ruling on his Petition.  (Doc. No. 11.)  Finally, Petitioner filed a TRO Motion seeking his immediate release from detention.  (Doc. No. 13.)  As for the request for permanent injunctive relief, the requested relief ("enjoining Respondents from further unlawful detention of Petitioner") is not sufficiently specific.  *See* Fed. R. Civ. P. 65(d)(1)(B).  Moreover, there is no dispute that Petitioner may be removed, and ICE should not be precluded from revoking Petitioner's release in the future so long as ICE complies with the law, including the section 241.13 regulations.  As for Petitioner's remaining requests, in light of the Court decision to grant the Petition, these requests are denied as moot.

---

[9]  The Court is also concerned that Respondents may not have complied with their obligation to notify Petitioner "[*u*]*pon* revocation" of "the reasons for revocation."  8 C.F.R. § 241.13(i)(3) (emphasis added).  As noted above, ICE did not serve the Revocation Notice until *after* Petitioner was already re-detained.  (Doc. No. 7 at 3–4; Rev. Notice.) The lack of factual detail also undermines the legitimacy of the Revocation Notice.  *See Sarail A.*, 2025 WL 2533673, at *3, *6 (finding that a notice that cited only "changed circumstances" without any explanation failed to comply with ICE's regulations); *Roble*, 2025 WL 2443453, at *3 (similar).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Petitioner Yee S.'s Petition for a Writ of Habeas Corpus (Doc. No. 1) is
      GRANTED in part and DENIED in part as follows:

      a.    Respondents are ORDERED to release Petitioner Yee S. from custody
            immediately, and in any event no later than <u>10:00 a.m. CT on October
            10, 2025</u>, subject to and in accordance with the conditions in his
            preexisting Order of Supervision dated December 13, 2021.

      b.    No later than <u>10:00 a.m. CT on October 10, 2025</u>, counsel for
            Respondents is ORDERED to provide a declaration pursuant to 28
            U.S.C. § 1746 affirming that Petitioner was released from custody in
            accordance with this Order.

2.    Petitioner's Emergency Motion to Expedite Pursuant to 28 U.S.C. § 1657
      (Doc. No. 11) is DENIED as moot.

3.    Petitioner's Emergency Motion for a Temporary Restraining Order Under
      Federal Rule of Civil Procedure 65(b) and Preliminary Injunction Under
      Federal Rule of Civil Procedure 65(a) (Doc. No. 13) is DENIED as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  October 9, 2025                    <u>*/s Jeffrey M. Bryan*</u>
                                           Judge Jeffrey M. Bryan
                                           United States District Court